OF THE STATE OF ARKANSAS. 7

DECEMBER TERM, 1862.] Delony vs. Delony et al. Ex'rs.

## DELONY VS. DELONY ET AL. EX'RS.

Deed of gift of slaves to B, to be held for the use of the grantor during life, then for the support of B and his children during his life, and upon his decease to belong to such child or children as survived him ; and if no child or children survived him, then to the plaintiff. B died leaving a child surviving him: *Held*, that the property vested absolutely in such child at the moment of the death of B.

Deed of gift of slaves and other personal property to M, to be held for the use of the grantor during life, and if at the decease of M, she should have no child or children surviving her, then all the property to belong to the plaintiff. M died without issue surviving her: *Held* that upon the death of M the property vested in the plaintiff, the limitation over not being upon an indefinite failure of issue.

Where it is shown by competent proof that the attesting witness to an instrument of writing is out of the jurisdiction of the court, or dead, the hand-writing of the maker may be proved—the attesting witness having subscribed his name by making his mark, which it is presumed cannot be proved or identified, like the hand-writing of an attesting witness. But where a witness merely states that he had heard that the attesting witness had gone to another state, and had since heard that he was dead, this is not sufficient to admit secondary evidence of the execution of the instrument.

*Appeal from Sevier Circuit Court.*

HON. LEN. B. GREEN, Circuit Judge.

GARLAND & RANDOLPH for appellant.

JENNINGS, WATKINS and KNIGHT for appellees.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

On the trial of this cause in the court below, the plaintiff, Alchymy Delony, introduced in evidence, without objection, the following deeds, under which he claimed the two slaves in controversy, *Joe* and *Jack:*

1st Deed—"Be it known that I, Ann Delony, of Madison

8        CASES IN THE SUPREME COURT

Delony vs. Delony et al Ex'rs.        [December

county, Alabama, influenced by parental affection for my son and grandchildren herein named, do give to my son, Henry R. Blount and his personal representatives or legal successor, my negro boy *Joe*, about seven or eight years old, as and for a slave for life, yet on the uses following: *First*, that during my life, he shall permit me to enjoy the services or hire of said boy as I may direct for my own subsistence and support, or so much thereof as I may deem needful: *Secondly*, that at my decease he hold the said slave for the support and education of his daughter and such other child or children as may be born to him and his own support during his life: *Thirdly*, that at his decease then the said slave is to belong to said Maria Ann, his daughter, and such other child or children to be to him born and who shall survive him: *Fourthly*, if at his decease there be no child or grandchild or children of his surviving, then the said slave is to belong to my grandchild *Alkomy* Delony, son of Lewis H. Delony. Witness my hand and seal, this 15th day of March, 1834."

2d Deed—"Be it known that I, Ann Delony, of Franklin county, Alabama, influenced by the affection that I have for my grandchildren herein named, do give to my granddaughter, Maria Ann, (wife of William R. Bross) and her bodily heirs or children my negro man *Joe*, about twenty-six years of age, and also my negro man *Jack* aged about thirty years, also all my household and kitchen furniture, and whatever else of personal or real property I may have at the time of my death, yet on the uses following: *first*, that during my life I am to be permitted to enjoy the services or hire and use of all the above-mentioned property as I may direct, for my own subsistence and support, or as much thereof as I may deem needful: and *secondly*, if at the decease of my said granddaughter, Maria Ann, (wife of William R. Bross) she should have no child or children surviving her, then all of the aforementioned property to belong to my grandchild *Alkomy* Delony, son of Lewis H. Delony. Witness my hand and seal this 21st day of October, 1852."

It was proven that Mrs. Ann Delony, the maker of the deeds,

OF THE STATE OF ARKANSAS. 9

TERM, 1862.]                Delony vs. Delony et al. Ex'rs.

remained in possession of the slaves until the time of her death, 4th November, 1854; after which her son, Edward B. W. Delony, against whom this suit was commenced, obtained possession of them. He died while this cause was pending in the court, and his executors were substituted as defendants.

It was also proven that Henry R. Blount died about the year 1852, leaving him surviving his only child, Maria Ann, and that she died without issue 16th July, 1856.

The court below, in refusing instructions moved by the plaintiff, and in giving others proposed by the defendants, involving the construction of the two deeds, misapplied the rule established in *Moody vs. Walker*, 3 *Ark.* 146, and approved and followed in *Watkins vs. Quarles and wife*, 23 *Ark.* 192, that a limitation over upon an indefinite failure of issue is void.

By the terms of the first deed, Maria Ann, who was living at the time of the death of her father, Henry R. Blount, took the slave *Joe* absolutely. The contingency upon which the plaintiff, Alchymy Delony, was to have the negro, never happened, according to the proof. He was to take the slave, under the fourth provision of the deed, not upon an indefinite failure of Blount's issue, but if at the time of his death there was no child or grandchild of his surviving. But his child, Maria Ann, was at that time living, and at the moment of his death the property vested absolutely in her, by the terms of the deed.

The counsel for the plaintiff, (appellant here,) insists, in argument, that the first deed had become inoperative at the execution of the second, but no such question is presented, by the record, to be determined by us. Both deeds were introduced by the plaintiff; and the first instruction moved for him covered both deeds. If the second instruction was framed with the intention of having the court to declare that Mrs. Ann Delony, by remaining in possession of the slave, *Joe*, for many years after the execution of the first deed, re-acquired title to him, by lapse of time, the court properly refused it, because her possession was consistent with the provisions of the deed, as by it she retained the use of the

slave for her life. But we suppose that such was not the design of the instruction, as it covers both slaves. The instruction was perhaps intended to counteract the effect of an instrument which the defendants were, permitted to introduce, against the objection of the plaintiff, which will be noticed below.

The language of the second deed, second provision, is, that "if *at the decease* of my said granddaughter Maria Ann, etc., she should have no child or children surviving her, *then* all of the aforesaid property to belong to my grandchild Alkomy Delony, etc."

Here the limitation over to the plaintiff was not upon an indefinite failure of the issue of Maria Ann, that is, upon the failure, or dying out of her issue at any future period of time, however remote, but he was most clearly to have the property if she had no child surviving her at the time of her death. See *Slaughter vs. Slaughter*, 23 *Ark.* 356 ; *Robinson vs. Bishop*, *Ib*. 375. And it was proven that she left no child.

On the trial, the defendants offered in evidence the following instrument.

"I do not lay any claim to Rachel, Jack and Joe, only when Rachel and Cate were sold by James H. Harrison, deputy sheriff, they were sold to pay my debts : Charles Malone bought them at my sale, and when E. B. W. Delony bought the said negroes back from Malone, he Malone made said E. B. W. Delony agree that I should keep them in possession as long as I lived, and at my death said negroes are to return to E. B. W. Delony or his heirs. May 15th, 1828.

ANN DELONY. [Seal.]

DANIEL ⋈ MORGAN. "
his
mark.

To prove the execution of the instrument, defendants introduced Wm. H. Turner, who was asked if he knew where Daniel Morgan, the attesting witness, was? and he said that he did not know of his own knowledge, but had heard that he went to North Carolina several years ago, and had since heard that he was dead.

Whereupon he was permitted by the court, to state, against the objection of the plaintiff, that he was acquainted with the handwriting of Mrs. Ann Delony, and that the signature to the instrument was in her hand-writing. Upon this proof of its execution, the defendants were permitted to read the instrument in evidence, against the objection of the plaintiff.

It was not sufficiently proven that the attesting witness was out of the jurisdiction of the court, or that he was dead, to admit secondary evidence of the execution of the instrument. Turner had heard that he went to North Carolina; and he had afterwards heard that he was dead. But how, or of whom he heard this, he does not state. It is not shown that any diligence was used to ascertain where the witness was, or whether he was in fact dead or living. No inquiry appears to have been made for him at his residence, or at any other place. It does not appear that his relations, or other persons, supposed to have knowledge of him, were applied to for information. See 1 *Greenlf. Ev.*, sec. 574.

Had it been shown by competent proof that the attesting witness was out of the jurisdiction of the court, or dead, the instrument might have been admitted upon proof of the signature of the maker; for the attesting witness being an illiterate person, as it may be inferred, and having subscribed his name by making his mark—a simple cross mark—it is not to be presumed that his mark could be proven or identified like the hand-writing of an attesting witness. 1 *Stark, Ev.*, (*Notes by Shars.*) 519; *Carrier vs. Hampton*, 11 *Iredell*, 311; *Woodman vs. Segar*, 25 *Maine*, 92; *Valentine vs. Piper*, 22 *Pick.*, 90; *Morgan vs. Curtinius*, 4 *McLean*, 368.

The appellant, for the errors above indicated, should have been granted a new trial.

The judgment must be reversed, and the cause remanded with instructions to the court below to grant the appellant a new trial.